## ROANOKE, N. & B. S. S. Co. v. THE LUCY.

*(District Court, E. D. North Carolina. January 15, 1891.)*

COLLISION—BETWEEN STEAMERS—RIVER BEND—SIGNALS.

Two steam-boats, the M. and the L., collided at a bend of the river, having sighted each other for the first time when they were 100 yards apart. The master, pilot, and two of the crew of the M. testified that she sounded a long blast of her whistle when half a mile from the bend, as required by rule 5 of the board of supervising inspectors. The master, pilot, engineer, and five of the crew of the L. testified that it was their boat that sounded the bend signal. Two disinterested witnesses, who were standing on a wharf, waiting for the L., testified that they knew the whistles of the two steamers; that they heard the signals given at the time of the collision; and that immediately before it they heard the L. give the bend signal, but none was given by the M. The engineer of the M. testified that he did not remember any bend signal from his boat. *Held*, that the M. was in fault.

In Admiralty.
*Albertson & Son* and *Pruden & Vann*, for libelants.
*Sharp & Hughes*, for claimant.

SEYMOUR, J. Cross-libels have been filed for damages caused by a collision between the steam-boats Meteor and Lucy, which occurred on the Roanoke river. The place was a bend in the river, two and a half miles below Williamston, and the time of day about 3 o'clock of the afternoon. The two steamers met at the very point of the bend. Upon the testimony of both parties they did not sight one another until about 100 yards apart. Supposing their joint speed to have been 10 miles an hour, it would have brought them together within 20 seconds. The Meteor was going down stream, the Lucy up. Both were evidently hugging the bend, or they would have seen one another at a greater distance than 300 feet. It is claimed that the Lucy committed an error in blowing one blast of her whistle, thereby signaling the Meteor that she intended to pass her port to port; that is, on the inside of the bend. It is possible that if she had passed to the left she might have succeeded in crossing the Meteor's bow, and have avoided being sunk by her. This would depend very much upon the relative speed of the boats, concerning which we have no evidence. It is also possible that in such case she would have been struck by the bow of the Meteor. It is not necessary to determine the point, even if it were possible to do so, for the error in judgment, if it were one, was committed *in extremis*, and cannot be considered a fault. As for the allegation that the pilot of the Lucy left the pilot-house before the moment of collision, I do not credit it. It is denied by all on his boat, and is not probable in itself. I have formed the same judgment respecting the alleged error of the pilot of the Meteor in backing after accepting, as he says he did, the signal of the Lucy to pass port to port. It is barely possible that by continuing at full speed he might have crossed the Lucy's bows; but the probability is that the Meteor would, in such case, have been struck amidship instead of near her bow, with greater damage than that actually received. But if there were an error of judgment committed in the 20 seconds or so between the time when the boats became aware of one another's vicinity and the collision, it cannot be considered as a fault, technically so termed, and will not subject to damages. But undoubtedly a fault was committed by one or both of the vessels before reaching the bend, and to that the collision must be attributed. By the fifth rule of the board of supervising inspectors it is provided that whenever a steamer is nearing a short bend or curve in the channel where a steamer approaching from the opposite direction cannot be seen for a distance of half a mile, the pilot of such steamer shall, within half a mile of such bend, give a signal by a long blast of the steam whistle. If such signal shall be answered by a like blast given by the pilot of any approaching vessel, the usual signals for meeting and passing shall immediately be given and answered. If both boats gave the required signal, both were equally at fault in not having subsequently, upon hearing that of the other, given the usual signals for

meeting and passing. I assume it to be impossible that either boat could have sounded its whistle without having been heard by those on the other had they been attentive to their duty. Evidence shows that blasts of the whistle at the time of the collision were heard at a much greater distance. If only one boat sounded, and no answering blast was given, that boat is free from fault, and the liability must rest on the other. Upon this point the witnesses are in direct conflict. The pilot, master, and two of the crew of the Meteor testify that the Meteor sounded a long blast of her whistle before coming to the bend, and that the Lucy did not. The pilot, master, engineer, and five hands on the Lucy testify that it was their boat which sounded a blast before coming to the bend, and that the Meteor did not. I do not lay stress upon the numerical superiority of forces on the Lucy's side. It was her fortune to have a larger crew to swear. The hands, being seafaring men, would naturally think they had heard what their officers had heard. In this state of the evidence I am influenced by two witnesses, who seemed to be impartial, who have no interest in the case, and who happen to have heard the whistles blown just before the collision. Harry Bond and Knowledge Barrow were standing on the river wharf at Williamston waiting for the arrival of the Lucy, on which they intended to go to their place of employment, a lumber-yard further up the river. They say they knew the whistles of the steamers, and that they heard the signals given immediately before the collision. Both of them say that just before, they heard the Lucy give one long bend whistle, and that the Meteor gave no bend whistle. Their employment near the river, and habit of traveling on and listening to river boats, make their statement that they knew the whistle of the Lucy entirely credible. Some significance can also be attached to the fact that the engineer of the Meteor has no recollection of a bend whistle sounded by his boat. It is true that he says he pays no attention to whistles, and that it might have been blown without his noticing it. This may be true, but, on the other hand, the fact that a collision immediately followed the time when the whistle ought to have been sounded renders it quite probable that his attention would have been called to the matter. If he did not observe at the time whether his boat had or had not signaled for the bend, it may be it was because such was not her usual habit. On the whole evidence I am of the opinion that the Lucy did and the Meteor did not sound a long blast for the bend; that the only fault committed was the Meteor's failure to so signal, and that such failure brought about the collision; that the collision, from the moment the boats sighted one another, was inevitable, or, if there was any error then committed, it was one of judgment, in an extremity, and not imputable as a fault; and that therefore judgment must be rendered dismissing the libel of the Meteor, with costs. As for the cross-libel, which, it was agreed, should abide the determination of this suit, I make no direction, as it is pending in the eastern district of Virginia.